16646

TINDAL v. ATLANTIC COAST LINE R. CO.

(71 S. E. (2d) 505)

*Messrs. McEachin, Townsend & Zeigler,* of Florence, *for Appellant,*

*Messrs. Willcox, Hardee, Houck & Palmer,* of Florence,

July 9, 1952.

OXNER, Justice.

This is a suit in equity to set aside and cancel, on the grounds of fraud and duress, a confession of larceny made by appellant and his resignation as an employee of the Atlantic Coast Line Railroad Company. By agreement of the parties, the case was heard by the County Judge without a jury. He concluded that both the confession and resignation were voluntarily made and dismissed the action.

On January 24, 1950, a railroad policeman saw someone removing boards which had been torn from a boxcar. The policeman ran after the thief, whom he did not recognize, but was unable to overtake him. As a result of information obtained that afternoon and night, appellant was taken the next day to the offices of the railroad police. He was requested to return later during the day. He says he did so but no one was in the office. The following afternoon, January 26th, he was again taken to the headquarters of the police department of the railroad where he was questioned at considerable length regarding the theft of the boards. Finally, a statement was prepared, read over to and signed by appellant, wherein he admitted that he and his son were guilty of stealing the boards from the boxcar. On January 27, 1950, appellant was requested to report to the master mechanic who read to him the confession made the previous day and after some discussion as to what should be done, appellant signed the following letter: "Please accept this as my resignation from the service of the Atlantic Coast Line Railroad Company effective immediately."

Appellant, a Negro, 56 years of age, worked for the Railroad Company for a period of 28 years. He was a member of the International Association of Machinists. Under the agreement between that organization and the Railroad Com-

pany, it is provided (Rule 21) : "No employee shall be disciplined without a fair hearing by a designated officer of the Company. * * * At a reasonable time prior to the hearing such employee and the local chairman will be apprised in writing of the precise charge against him. The employee shall have reasonable opportunity to secure the presence of necessary witnesses and be represented by the duly authorized representative of System Federation No. 42."

It is alleged in the complaint that although appellant protested his innocence of the charge, respondent's agents threatened him and his son "with criminal prosecution unless he would sign a confession stating that he assisted in the alleged theft", and promised that if he made a confession, the Railroad Company "would drop the charges against his son" and "would not punish or discipline him". It is claimed that by reason of these intimidations and misrepresentations he was induced to sign the purported confession. It is further alleged that the master mechanic stated to appellant that he "must either resign or suffer the humiliation of arrest or discharge for theft", and fraudulently misrepresented his rights "in connection with discipline of union members" by the Railroad Company. Appellant asserts that his resignation was procured by these threats and misrepresentations.

The Railroad Company in its answer, after denying the foregoing charges, alleged that both the confession and the resignation were voluntarily made.

The trial Judge, who had the opportunity of seeing and observing the witnesses, stated in his order: "Able oral arguments have been made by the attorneys for the parties, and, after giving the matter mature consideration, I have reached the conclusion that the plaintiff has failed to prove the allegations of his complaint. He has failed to establish by the greater weight of the evidence that the confession and the resignation were obtained through fraud, threats, duress and misrepresentations, and since the resignation was volun-

tarily submitted by the plaintiff he is not entitled to an investigation, as provided under Rule 21 of the Collective Bargaining Agreement between the defendant and its employees, since the plaintiff is no longer an employee of the defendant company."

The foregoing findings of fact are fully sustained by the evidence. Appellant's explanation of signing the instruments sought to be set aside is rather unsatisfactory. His testimony is weak on the questions of fraud and duress. The greater weight of the evidence is to the effect that he was not abused or intimidated by the railroad policemen. When on the day following the confession it was again read over to him, he did not repudiate it but sought the advice of the master mechanic, under whom he worked, as to what he should do. Mr. Kyle, the master mechanic, gave the following version of the conversation leading up to appellant's resignation:

"Q. Mr. Kyle, what did you say to Tindal when he came in? A. When Tindal came into my office, I told him that I had a report from the police department concerning his actions on the afternoon of January 24 and read him the form.

"Q. Did you ask him if that was his statement? A. Yes, sir.

"Q. What did he say? A. He told me that it was true.

"Q. Did he say anything else? A. After he said that the statement was true he asked me if I would be able to help him keep his job.

"Q. What did you say? A. I told him that on the strength of the statement that I would have to give him an investigation, that if he had admitted stealing the property there would not be anything for me to do but recommend dismissal.

"Q. And you did tell him that you would have to give him an investigation? A. Yes, sir.

"Q. Did he say that he wanted an investigation? A. He didn't want an investigation.

"Q. What did he say? A. He asked me if there was any way to get out of an investigation. If he didn't want an investigation at this time, I informed Tindal that the only way of preventing an investigation would be to resign at that time. He asked me if he would resign would they have to go to court. I told him that I didn't have a thing in this world to do with court procedure although it is the custom that the company didn't prosecute employees for stealing.

"Q. Now, Mr. Kyle, as a result of your talk with Tindal did he sign a resignation? Is this the resignation? A. Yes, sir.

"Q. Did he sign the resignation in front of you? A. Yes, sir.

"Q. Did you offer him any inducement or threaten him? A. I didn't offer any inducement or threaten him in any way."

We find it unnecessary to further review the testimony in this case. It is sufficient to say that after carefully considering it, we are satisfied that the trial Judge reached the proper conclusion.

Affirmed.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.